**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **DOCKET NO. 2:24-cr-00040-NT** |
| | ) | |
| | ) | |
| **ALBERTO REBOLLAR OSORIO** | ) | |
| | ) | |

**DEFENDANT'S MOTION TO SUPPRESS**

Now comes the defendant, Alberto Rebollar Osorio, who respectfully moves the Court to suppress the fruits of the warrantless search of a motor vehicle driven by him on February 2, 2024 by Officer Tyler Fournier of the Oxford County Sheriff's Department. This includes, but is not limited to, a backpack containing a firearm and ammunition. As grounds for this motion, defendant states that the search was conducted in violation of his rights under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures. Mr. Rebollar Osorio further moves to suppress statements made in the nearly forty minutes before he was informed of his rights under *Miranda* as well as any subsequent statements (a) as violation of his right against self-incrimination under the Fifth Amendment, and (b) as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963); *Miranda v. Arizona*, 384 U.S. 436 (1966)**.**

When government actors conduct a search without a warrant, they have presumptively violated the Fourth Amendment. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Since the seizure and search at issue was not supported by a warrant, the government has the burden of showing that the challenged police conduct was lawful. *United States v. Monteiro*, 447 F.3d 39, 43 (1st Cir. 2006). The Defendant requests an evidentiary hearing on this motion and reserves the right to supplement or amend this motion after the government files its response.

1

### I.      STATEMENT OF FACTS

According to the police reports of Oxford County Officer Tyler Fournier, on February 2, 2024, he stopped the vehicle Mr. Rebollar Osorio was driving for speeding.[1] There was no other reason for the stop. Unfortunately, the body worn camera for Officer Fornier does not begin until after Officer Fournier obtained Mr. Rebollar Osorio's Mexican passport and returned to his cruiser.[2] Because of this, there is no true record of the initial interactions between Officer Fournier and Mr. Rebollar Osorio. The length of time between the stop and when Officer Fournier returned to his cruiser is unknown. The substance of the discussions was not recorded. The time stamp when the video begins is 19:11:14.

By the time the video begins, Officer Fournier had called Customs and Border Patrol. Officer Fournier returned the side of Mr. Rebollar Osorio's truck to question him further. He starts by telling Mr. Rebollar Osorio that Customs and Border Protection was on the way. Officer Fournier questioned Mr. Rebollar Osorio about his immigration status and documentation.  Mr. Rebollar Osorio, though he remained in his vehicle, was not free to leave nor was he under arrest.

Border Patrol Agent Atkinson joined Deputy Fournier approximately fifteen minutes after Officer Fournier called him to the scene. Agent Atkinson stood with Officer Fournier at the drivers' side door of Mr. Rebollar Osorio's vehicle to question him. Agent Atkinson asked Mr. Rebollar Osorio if he had any identification beside his Mexican Passport and Mr. Rebollar Osorio offered his Mexican Drivers License. Mr. Rebollar Osorio was questioned about when he came to the United States, where he entered and how he entered. Mr. Rebollar Osorio answered honestly by saying that he entered approximately eleven years ago in Texas with the assistance of a coyote.

---

[1] Officer Fournier's report has been submitted to the Court, marked as Def.'s Ex 1.
[2] The body worn camera footage was broken into three parts. All three parts have been submitted to the Court, marked as Def. Ex 2, 3, and 4.

The officers ordered Mr. Rebollar Osorio out his vehicle at this point. They engaged in a discussion about towing his vehicle. Ultimately, Officer Fournier decided he would tow the truck. As Mr. Rebollar Osorio was escorted to the back of his truck by Agent Atkinson, Officer Fournier questioned Mr. Rebollar Osorio as to whether or not there were any drugs in his vehicle. Mr. Rebollar Osorio indicated that there is a small amount of THC that belonged to his friend. As he explained this, Agent Atkinson ordered Mr. Rebollar Osorio to keep his hands out of his pockets. Officer Fournier asked Mr. Rebollar Osorio if there were any weapons in the vehicle. Mr. Rebollar Osorio said there was a firearm in his backpack in the back of the truck. Agent Atkinson began to search Mr. Rebollar Osorio. Officer Fornier approached Mr. Rebollar Osorio and asked, again, where the firearm was in the vehicle. Mr. Rebollar Osorio reiterated that it was in the back seat.

Officer Fournier began the search of Mr. Rebollar Osorio's vehicle with the backpack but was initially unable to locate the firearm. He asked Mr. Rebollar Osorio, where the firearm was in the backpack. Mr. Rebollar Osorio told him, again, where it was – in the backpack, in the bottom. At this point Officer Fournier located the firearm.

Officer Fournier questioned Mr. Rebollar Osorio about who owned the firearm while he was handcuffed and guarded by Officer Atkinson. Mr. Rebollar Osorio was not read his *Miranda* rights until 19:58 according to the body camera's time stamp. This is more than 45 minutes after officers began explicitly questioning Mr. Rebollar Osorio about his status and the presence of a firearm.  The questioning continued while Mr. Rebollar Osorio was handcuffed, and seat belted into the back of first one cruiser, and then another, and then another. He was questioned about who was calling his phone, his employment, and his drug use. Although not recorded, presumably the questioning continued after the recordings were turned off because the video ends with the officers still trying to confirm where Mr. Rebollar Osorio was residing.

3

I. **THE STOP OF MR. REBOLLAR OSORIO'S VEHICLE AND THE EXTENSION OF THE STOP TO WAIT FOR CUSTOMS AND BORDER PROTECTION WERE UNLAWFUL.**

   a. **The Fourth Amendment Protects An Individual's Right To Be Free From An Unlawful Seizure.**

The Fourth Amendment to the United States Constitution affords all individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. The exclusionary rule provides that evidence obtained in violation of the Fourth Amendment is inadmissible at trial. *Mapp v. Ohio*, 367 U.S. 643 (1961); *see also United States v. Calandra*, 414 U.S. 338, 347 (1974) (stating prime purpose of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures"). In addition to evidence obtained directly through the violation of the Fourth Amendment, the "fruits" of such illegal conduct must also be excluded from trial. *Wong Sung v. United States*, 371 U.S. 471 (1963).

A warrantless automobile stop is a seizure of the vehicle's occupants which must comport with the requirements of the Fourth Amendment. *Brendlin v. California*, 127 S. Ct. 2400 (2007). Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the provision. *Delaware v. Prouse*, 440 U. S. 648, 653 (1979). Warrantless search and seizures, such as automobile stops, are presumptively unreasonable. *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009). The government always bears the burden of proving reasonableness. *United States v. Monteiro*, 447 F.3d 39, 43 (1st Cir. 2006).

Police may stop a vehicle if there is probable cause to believe the operator committed a traffic infraction. *Whren v. United States*, 517 U.S. 806, 817-818 (1996). Absent a civil infraction, a warrantless vehicle stop is unconstitutional at its inception and all evidence derived directly or

indirectly therefrom, including observation, physical items, and statements, must be suppressed. *Monteiro*, 447 F.3d at 43; *Wong Sung*, 371 U.S. at 487-488.

Here, the initial impetus for the stop was purported to be a civil speeding infraction. However there is no evidence of any motor vehicle violation. There is no radar or dash camera regarding speed. No ticket was issued for speeding. No radio traffic or dispatch report relaying any claim of speeding has been produced. There is no evidence of a traffic violation, nor probable cause or a reasonable suspicion that supports the stop.

**b.     The Scope Of The Police Conduct Exceeded What Was Permissible Under The Circumstances.**

A police stop exceeding the time needed to handle the matter for which the stop was made violates the United States Constitution's shield against unreasonable seizures. *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015). A seizure justified only by a police-observed traffic violation, therefore, "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.*, quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  The stop cannot be prolonged unless the police have an independent, reasonable suspicion for expanding their investigation.  *United States v. Dion*, 859 F.3d 114, 124 (1st Cir. 2017); *United States v. Moustrophis*, 560 F. Supp. 3d 333, 339-340 (D. Me. 2021).

In this case, Rebollar Osorio provided his documentation to Officer Fournier who returned to his cruiser with the same in hand. Then he returned to the vehicle and told Mr. Rebollar Osorio that Customs and Border Protection was on their way. He questioned Mr. Rebollar Osorio further about his legal status, shifting the focus away from the circumstances of the stop. By prolonging the detention to wait for Customs and Border Protection, Officer Fournier seized Mr. Rebollar Osorio without probable cause. Accordingly, all evidence obtained as a result of the illegal seizure and subsequent search must be suppressed.

II.   **THERE WAS NO PROBABLE CAUSE TO SEARCH THE VEHICLE OR THE BACKPACK AND ANY EVIDENCE SEIZED THEREFROM AND ANY FRUITS THEREOF MUST BE SUPPRESSED.**

a.   **Removal Of Mr. Rebollar Osorio From The Car And The Search Of The Vehicle Were Improper.**

As a general rule, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). An investigatory stop does not give an officer an automatic right to remove a person from his vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (right to remove driver arises only "when a motor vehicle has been lawfully detained for a traffic violation."). An officer may order the driver to get out of the car until the traffic stop is complete and conduct a frisk for weapons only if the officer has reasonable suspicion that the car's occupants are armed and dangerous. *United States v. Fernandez*, 600 F.3d 56, 59 (1st Cir. 2010) (internal citation omitted); *United States v. Coplin*, 463 F.3d 96, 102 (1st Cir. 2006) (recognizing that an officer's ability to remove a vehicle's occupant is "grounded in legitimate concerns for officer safety.").

There was no basis to remove Mr. Rebollar Osorio from the vehicle. At the point Mr. Rebollar Osorio was ordered from the vehicle, there were no legitimate concerns for officer safety. Mr. Rebollar Osorio was polite, calm, and responsive to everything Officer Fournier asked of him. When Mr. Rebollar Osorio was ordered from the car, there was no suspicion that he was dangerous and he was not under arrest, so the resulting search was not grounded in officer safety concerns.

b.   **The Automobile Exception Does Not Apply Because There Was No Probable Cause To Believe The Vehicle Contained Evidence Of Criminal Activity.**

The "automobile exception" provides that "police officers may seize and search an automobile prior to obtaining a warrant where they have probable cause to believe that the

6

automobile contains contraband." *United States v. Silva*, 742 F.3d 1, 7 (1st Cir. 2014); see also

*Ornelas v. United States*, 517 U.S. 690, 693 (1996) ("[A] warrantless search of a car is valid if

based on probable cause."); *United States v. Polanco*, 634 F.3d 39, 42 (1st Cir. 2011) ("[T]he auto

exception . . . provides that '[i]f there is probable cause to believe a vehicle contains evidence of

criminal activity,' agents can search without a warrant 'any area of the vehicle in which the

evidence may be found.'") (quoting *Arizona v. Gant*, 556 U.S. 332, 347 (2009)). Probable cause

to search a vehicle is present "where the known facts and circumstances are sufficient to warrant

a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."

*Ornelas*, 517 U.S. at 696 (citing *Brinegar v. United States*, 338 U.S. 160, 175–176 (1949)).

Mr. Rebollar Osorio was not stopped for any reason remotely related to a suspicion of

criminal activity. There is nothing contained within the police reports indicating that during the

initial encounter Officer Fournier had an inkling of a suspicion of criminal activity. The act of

being present in the United States in violation of immigration laws is not, standing alone, a crime.

At the time he was removed from the vehicle, Mr. Rebollar Osorio was not under arrest, he had

not committed a crime. The automobile exception does not apply here.

  **c.**  **This Was Not A Proper Border Search And Does Not Fall Within Any Recognized Exception To The Warrant Requirement For A Border Search.**

This search was not conducted at the border and does not fit within the established

exception to the warrant requirement for a border search. See *United States v. Flores-Montano*,

541 U.S. 149, 152-153 (2004). It does not fit within the so called "extended border search"

exception.[3] Unlike a border search at a port of entry (or its equivalent), extended border searches

---

[3] Although seven circuits have recognized the extended border search doctrine, the first circuit has not weighed in. *United States v. Stewart,* 729 F.3d 517, 524-25 (6th Cir. 2013) (noting that although the Second, Fourth, Third, Fifth, Seventh, Ninth, and Eleventh circuits have recognized the extended border search doctrine, they have not all adopted it).

must be supported by "the dual requirements of reasonable certainty of a recent border crossing and reasonable suspicion of criminal activity…" *United States v. Guzman-Padilla* 573 F.3d 865, 878-879. Reasonable certainty is "a higher standard than that of probable cause but does not require knowledge beyond a reasonable doubt." *Id. at 880.*

Although an Agent from United States Customs and Border Protection was present at the time of the search, this search occurred too far from a border crossing or a point of entry to be considered a conventional border search. Officer Fournier was aware from his questioning of Mr. Rebollar Osorio that he has lived in the country for more than a decade, so the border crossing was not recent. Mr. Rebollar Osorio was stopped for a civil speeding violation. Officer Fournier noted nothing in his report that would indicate there was any suspicion whatsoever of any criminal activity. The government cannot rely on any border search exception.

        **d.**        **The Search Of Mr. Rebollar Osorio's Vehicle Was Not Conducted Pursuant To A Valid Inventory Procedure.**

After an arrest, when a car is impounded, the police are permitted to search the car for purposes of creating an inventory of the car's contents. *Florida v. Wells,* 495 U.S. 1, 4–5 (1990). The purpose of an inventory search is to protect the owner's property and avoid disputes with the police department concerning lost property. *Id.* To be permissible under the Fourth Amendment, warrantless inventory searches must be conducted according to standardized procedures. *South Dakota v. Opperman,* 428 U.S. 364, 372–75; *Colorado v. Bertine,* 479 U.S. 367, 374 n. 6, 375 (1987); *Florida v. Wells,* 495 U.S. 1, 4–5 (1990). Any "discretion [must be] exercised according to standard criteria and on the basis of something other than suspicion of criminal activity." *Bertine,* 479 U.S. at 375. To justify the search of closed containers during an inventory search, officers must be acting pursuant to a specific policy regarding closed containers. *Wells* 495 U.S. at 4-5.

First, in order for this to be a valid inventory search, Mr. Rebollar Osorio must have been arrested at the time of the inventory search. There is no indication that he was under arrest at the time he was removed from the vehicle. Even if he was under arrest, the search of the vehicle and the backpack were not conducted according to standardized procedures. It is not clear at this point whether the Oxford County Sheriff's Department has a standard inventory procedure.[4] The Oxford County Sheriff's Department policies regarding the necessity of seizing a vehicle are unknown. There is no indication as to whether there is a policy regarding the search of closed containers. No list of items found in the vehicle pursuant to an inventory search has been produced. The government cannot meet its burden of showing the search was conducted in accordance with a valid inventory policy.

### III.    Defendant's Statements Must be Suppressed As Fruit of the Poisonous Tree and Violations of His Fifth Amendment Rights.

#### a.    Mr. Rebollar Osorio's Statements Must be Suppressed As Fruit of the Poisonous Tree As They Were Tainted By Prior Constitutional Violations.

Lacking a basis for the stop, there is no valid reason for the police to search the vehicle or to arrest Mr. Rebollar Osorio or subsequently question him. Mr. Rebollar Osorio's statements are "fruit of the poison tree" and must be suppressed. *Wong Sun v. U.S.* 371 U.S. 471 (1963). The government bears the burden of showing a break in the "causal link" between the initial impropriety and the defendant's later statements. *Kaupp v. Texas*, 538 U.S. 626 (2003).

Any information gained by the government that flows from an investigative method occurring after unconstitutional conduct is considered fruit of the poisonous tree. If not for the unfounded stop of the vehicle, the unlawful prolonging of the seizure, and the unlawful removal

---

[4] Counsel specifically requested as part of discovery the standard operating procedures of the Oxford County Sheriff's department but has not yet received them.

of Mr. Rebollar Osorio from the vehicle, law enforcement would not have continued to question Mr. Rebollar Osorio eliciting incriminating statements from him. Mr. Rebollar Osorio respectfully asks that said evidence, including any statements, be suppressed and excluded from trial.

        **b.**        **Mr. Rebollar Osorio Was Subjected To Custodial Questioning Without Being Informed Of His Rights Under *Miranda v. Arizona.***

Any statements made by an individual without the benefit of *Miranda* are a violation of the Fifth Amendment of the United States Constitution. *Miranda v. Arizona*, 384 U.S. 436, 466 (1966). "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). If a "reasonable person in [the defendant's] position would have believed that he was in police custody and [was] being constrained to a degree associated with formal arrest," then custody has been established for *Miranda* purposes. *United States v. Trueber*, 238 F.3d 79, 93 (1st Cir.). "The functional equivalent of questioning is any words or action on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Davis*, 773 F.3d 334, 339 (1st Cir. 2014) (internal quotation marks omitted) (quoting *Innis*, 446 U.S. at 301). Police are specifically forbidden from questioning a suspect, *Mirandizing* him, and then re-questioning him in order to make the subsequent warned statements admissible. *See Missouri v. Seibert*, 542 U.S. 600 (2004).

Even before he was formally arrested, Mr. Rebollar Osorio was functionally in the custody of the Oxford County Sheriff and Customs and Border Protection. Mr. Rebollar Osorio was stopped by Officer Fournier. As soon as Officer Fournier took custody of the Mexican passport, he knew that he was calling Customs and Border Protection and that he would not permit Mr. Rebollar Osorio to leave at least until an Agent arrived. Officer Fournier was in full control of the environment on the side of the road. Mr. Rebollar Osorio was ordered out of the vehicle, where he

was searched and handcuffed. Mr. Rebollar Osorio was moved from cruiser-to-cruiser multiple times, each time remaining handcuffed and being seat belted into the vehicle. Mr. Rebollar Osorio was never told that he was free to leave. There is no question that *Miranda* warnings were not administered until at least 40 minutes after the questioning of Mr. Rebollar Osorio began. All of Mr. Rebollar Osorio's statements following the seizure of his passport must be suppressed including those made post-*Miranda*.

    **c.      Involuntary Statements And Their Fruits Are Inadmissible Against A Defendant In Court.**

The burden is on the government to prove voluntariness by a preponderance of the evidence. *United States v. Jackson,* 918 F.2d 236, 241 (1st Cir. 1990). In *United States v. Hufstetler*, 782 F.3d 19, 22 (1st Cir. 2015), the First Circuit stated, "To make a voluntariness determination, we engage in a 'totality of the circumstances' inquiry." (citing *U.S. v. Hughes*, 640 F.3d 428, 438 (1st Cir. 2011). The voluntary nature of statements is determined by looking at "both the nature of the police activity and the defendant's situation." *Hughes* at 438. "The lynchpin of our analysis is whether the government's conduct overtook the will of the defendant." *Hufstetler* at 22 (citation omitted). "Relevant considerations include the length and nature of the questioning, promises or threats made by investigators, and any deprivation of the suspect's essential needs." *United States v. Jacques*, 744 F.3d 804, 809 (1st Cir. 2014) (citing *Hughes* at 438). "They also include the defendant's personal circumstances, including his age, education, intelligence, and mental condition," "as well as his prior experience with the criminal justice system." *Id.* (citations omitted).

Mr. Rebollar Osorio's Statements were involuntary. Mr. Rebollar Osorio has minimal experience with law enforcement. He has never been arrested or charged with a crime. He has never been the subject of a police investigation. He had never spent a night in jail. He had never

11

been to a criminal court proceeding. The criminal justice system was completely unfamiliar to Mr. Rebollar Osorio. He was not informed of his Constitutional rights. As an undocumented person of color Mr. Rebollar Osorio is naturally wary of police officers. He is terrified that he will be removed from the country. He feared the officers. The officers repeated questioning, removing him from his vehicle, moving him from cruiser to cruiser all resulted in involuntary statements made by Mr. Rebollar Osorio.

## IV.    CONCLUSION

WHEREFORE, for all the foregoing reasons, Mr. Rebollar Osorio respectfully seeks an order from this Honorable Court suppressing and excluding from trial all evidence obtained as a result of the illegal and unconstitutional stop and search of the vehicle and backpack referenced herein, and all "fruits" derived therefrom to include but not be limited to any statements provided to law enforcement.

DATED: May 23, 2024

/s/ Caleigh S. Milton_____
Caleigh S. Milton
Attorney for Defendant
Assistant Federal Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070
FAX: 553-7017
caleigh_milton@fd.org

## CERTIFICATE OF SERVICE

I, Caleigh S. Milton, attorney for Alberto Rebollar Osorio, hereby certify that I have served electronically, a copy of the within **MOTION TO SUPPRESS** upon Assistant United States Attorney Peter Brostowin and via the ECF system.

DATE: May 23, 2024

/s/ Caleigh S. Milton
Caleigh S. Milton